MILBANK, TWEED, HADLEY & McCLOY LLP
LINDA DAKIN-GRIMM (CA Bar No. 119630)
ldakin-grimm@milbank.com
GABRIEL M. WEAVER (CA Bar No. 254533)
gweaver@milbank.com
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063

*Attorneys for Respondent
Broadcast Music, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPIX, INC., et al., <br> Applicants, <br> v. <br> BROADCAST MUSIC, INC., <br> Respondent. | Case No.: CV 11-4052 SJO (JEMx) <br> Related to Case No. 09-CV-10366 (LLS) (S.D.N.Y.) <br> **RESPONDENT BMI'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL FOX BROADCASTING COMPANY TO PRODUCE DOCUMENTS** <br> Hearing Date: June 28, 2011 <br> Time: 10:00 a.m. <br> Courtroom: 833C <br> Discovery Cutoff: December 15, 2011 <br> Pre-trial Conference: March 23, 2012 <br> Trial Date: TBD |

BMI[1] submits this Supplemental Memorandum of Law in support of its Motion to Compel FOX to produce: (i) Revenue Documents; (ii) Audience Information; (iii) Music Use Information; and (iv) New Media Information.

---

[1] All capitalized terms have the meaning attributed to them in the Joint Stipulation Regarding Respondent BMI's Motion to Compel Fox Broadcasting Company to Produce Documents, filed May 11, 2011 (the "<u>Joint Stipulation</u>" or "<u>JS</u>") (Docket No. 2). Attached hereto is a Proposed Order.

# **TABLE OF CONTENTS**

**Page**

I. ARGUMENT ............................................................................................... 1

    A. FOX HAS FAILED TO ESTABLISH UNDUE BURDEN ...................... 1

    B. THE ADVERTISING REVENUE DOCUMENTS ARE RELEVANT ................................................................................................. 1

    C. RETRANSMISSION CONSENT REVENUE DOCUMENTS ARE RELEVANT ............................................................................ 4

    D. FOX'S MUSIC USE INFORMATION IS DISTINCT FROM BMI'S ......................................................................................................... 4

    E. NEW MEDIA INFORMATION IS RELEVANT ................................... 5

II. CONCLUSION ........................................................................................... 5

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arista Records LLC v. Lime Group LLC*,
  No. 06 CV 5936 (KMW), 2011 WL 781198 (S.D.N.Y. Mar. 4, 2011) ...............1

*Coulter v. Murrell*,
  No. 10-102, 2011 WL 666894 (S.D. Cal. Feb. 14, 2011) .....................................1

*DirecTV, Inc. v. Trone*,
  209 F.R.D. 455 (C.D. Cal. 2002)..........................................................................4

*United States v. Am. Soc'y of Composers, Authors, & Publishers* (*In re Applications of Fox Broad. Co.*),
  870 F. Supp. 1211 (S.D.N.Y. 1995) ..............................................................2, 3

*Viacom Int'l, Inc. v. YouTube, Inc.*,
  253 F.R.D. 256 (S.D.N.Y. 2008)..........................................................................4

*Viacom Int'l, Inc. v. YouTube, Inc.*,
  No. C 08-80129 SI, 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ....................4

*Visto Corp. v. Smartner Info. Sys., Ltd.*,
  Nos. 06-80339 MISC RMW (RS), 06-80352 MISC RMW (RS), 2007 WL 218771 (N.D. Cal. Jan. 29, 2007) .......................................................................4

**RULES**

Fed. R. Civ. P. 26(b) ................................................................................................1

# I. ARGUMENT

## A. FOX Has Failed to Establish Undue Burden

The liberal definition of relevance under Rule 26(b) is not altered when discovery is sought from third parties. JS at 12-13. FOX's assertion that BMI must meet a "heightened discovery standard" because FOX is a third party, JS at 25, 28-29, is wrong. The cases cited by FOX hold only that courts must consider the burden imposed on a third party, not that there is a different standard of relevance.[2] FOX makes only generalized, unsupported burden objections. JS at 29, 46-48, 53, 63. As the party resisting discovery, FOX has a "heavy burden" of proof and must detail with precision the alleged burden. *See* JS at 41-42, 65.[3] FOX does not even attempt to make a factual showing of burden for any request other than the Audience Information requests, making clear that any objection to producing the Revenue Documents, Music Use Information, and New Media based on burden is unfounded.[4]

## B. The Advertising Revenue Documents Are Relevant

FOX argues that the Advertising Revenue Documents are irrelevant. That is not the case. FOX acknowledges that it derives revenue *from*, but has not acquired a license *for* the music performed in FOX programs, the FOX Affiliate Stations do. JS at 2-3, 4-5, 25. Thus, all of the music performed in FOX programs—and the revenue

---

[2] *See, e.g., Coulter v. Murrell*, No. 10-102, 2011 WL 666894, at *3 (S.D. Cal. Feb. 14, 2011) (courts should guard nonparties against the imposition of undue burden) (citation omitted).

[3] FOX's own authority confirms this. *See Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW), 2011 WL 781198, at *3 n.3 (S.D.N.Y. Mar. 4, 2011) (finding undue burden based on sworn declarations "detailing the time-consuming and costly collection and review process").

[4] Nor does FOX adequately demonstrate the burden of producing the Audience Information. *See* JS at 41-44. And FOX's remaining objections to production of the Audience Information are baseless. *See* JS at 37-41.

resulting from those performances—are the very *subject* of the license at issue in the Rate Court Proceeding. FOX also concedes that rate courts consider advertising revenue associated with music use when setting a reasonable music performing license fee. JS at 14-15.

FOX accepts that its programs generate, *inter alia*, two streams of advertising revenue—one paid to FOX for "national spots" and one paid to the individual FOX Affiliate Stations for "local spots." JS at 13-14; Mayberry Decl. ¶ 7.A. Yet FOX attempts to draw a distinction between *its* advertising revenues and its Affiliate Stations' advertising revenues—both of which are *derived from the same programs broadcast by the same stations containing the music at issue in the Rate Court Proceeding*. This is a distinction without a difference. When setting a reasonable fee for local television stations, rate courts consider advertising revenues derived from all programs being licensed—FOX's revenues are included in those revenues.[5] JS at 3, 13. FOX suggests that the only way that its revenues could be relevant is if FOX were itself an Applicant. *See* JS at 25, 31. That is not true. The music in FOX programs is at issue in this local television case, and all advertising revenue from FOX programs—whether accrued to FOX or the FOX Affiliate Stations—will be considered by the SDNY. JS at 14. The *Fox Broadcasting* case indicated just that. The court there held that "revenue from Fox programs"—without distinguishing between revenues from national spots and local spots—is "used to calculate the license fees collected from the local stations." *See United States v. ASCAP* (*In re Applications of Fox Broad. Co.*), 870 F. Supp. 1211, 1216 (S.D.N.Y.

---

[5] BMI does not argue, as FOX suggests, that courts determine license fees "calculated as a percentage of revenues." *See* JS at 31. BMI argues—and FOX agrees—that changes in advertising revenue are considered by rate courts when setting a fee. *Compare* JS at 15, *with* JS at 30.

2

1995).[6]  FOX does not (and cannot) cite *a single* case that precludes a rate court from considering FOX's advertising revenues.

BMI also has shown (contrary to FOX's assertions) that it has a real need for these documents.  The Petition seeks a "significant reduction" in BMI license fees based on an allegation that the economy has negatively affected Applicants' "advertising revenues, the staple of their businesses."  *See* Dakin-Grimm Decl. Ex. A ¶¶ 3, 14-15.  To respond to this claim about the economy, BMI needs information regarding *all* advertising revenues derived from all programs broadcast on local television, including FOX's revenue from FOX programs.  *See* JS at 16.  Further, the hugely popular FOX music-based programs generate unprecedented advertising revenues.[7]  JS at 15-16.  If these revenues were excluded from the rate court's analysis, BMI's license fees would be significantly undervalued.[8]

---

[6]  FOX claims that the *Fox Broadcasting* case undermines BMI's position because the case held that FOX is "under no obligation" to obtain a "through-to-the-viewer" music performance rights license from PROs.  JS at 31; *see also* JS at 25-26.  That holding *supports* BMI's position.  Unlike the Licensed Networks, which separately pay for their own "through-to-the-viewer" licenses, the music in and the revenues related to FOX programs are only considered in connection with the licenses at issue in the Rate Court Proceeding.  *See* JS at 2-3.  For that reason, FOX's discussion of whether BMI will produce documents related to the Licensed Networks (*see* JS at 33, 63) is irrelevant as those networks' fees (and revenues) are not at issue.

[7]  FOX's additional argument that FOX has not produced advertising revenue documents before and the *Buffalo Broadcasting* decision did not consider FOX's advertising revenue says nothing about the relevancy of the documents today.  JS at 31-32.  *Buffalo Broadcasting* was decided only eight years after FOX began operating and long before high-revenue, music-intensive FOX programming like *American Idol* and *Glee* revolutionized television.  *See* JS at 15-16, 19-20.  Eighteen years later, the television landscape has changed dramatically and FOX is now "the leading broadcast television network among Adults 18-49," the demographic most favored by advertisers.  JS at 15.  Its Advertising Revenue Documents are highly relevant.

[8]  FOX also purports to lodge a confidentiality objection.  JS at 27-28.  But the Protective Order is more than sufficient to allay FOX's confidentiality concerns.  *Id.* at

3

### C. Retransmission Consent Revenue Documents Are Relevant

FOX's only objection to producing the Retransmission Consent Revenue Documents is that they are alleged to be duplicative of its Affiliate Stations' own Retransmission Consent Revenue Documents. JS at 34-35. FOX does not dispute their relevance, nor could it. Judge Stanton of the SDNY recently held that retransmission consent revenue is "certainly as direct[ly relevant] as revenues from advertising and disclosure of them has to be made." Supplemental Decl. of Linda Dakin-Grimm Ex. A at 6:2-9. Further, BMI seeks only documents "*sufficient to show* revenues derived from retransmission consent fees" from FOX. Yet FOX insists that the FOX Affiliate Stations' documents are adequate "to satisfy [BMI's] discovery needs." JS at 7, 35. BMI has demonstrated (and FOX does not contest) that FOX is likely to have unique documents that the FOX Affiliate Stations lack. *See id.* at 18-19. BMI therefore has a substantial need for the limited Retransmission Consent Revenue Documents it has requested and that are in FOX's, and not the FOX Affiliate Stations', possession. *Viacom Int'l, Inc. v. YouTube, Inc.,* No. C 08-80129 SI, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008).

### D. FOX's Music Use Information Is Distinct From BMI's

FOX concedes that information it possesses about its own use of music is relevant. Claiming to be a non-party, FOX objects only on the ground that BMI has not produced cue sheet information *to BMI's opponent in the case*. JS at 51-55. FOX's argument is unavailing. BMI's collection of cue sheets is not analogous to FOX's Music Use Information; BMI seeks FOX's own analysis of its music use, not

---

20-22. And FOX does not argue otherwise. JS at 27. FOX asserts only that BMI has not shown "the requisite degree of need for the information." *Id.* But BMI has shown a need (*see id.* at 13-16, 20-22; *infra* at 2-3), making the case law cited by FOX inapposite. *See Viacom Int'l, Inc. v. Youtube, Inc.*, 253 F.R.D. 256, 260 (S.D.N.Y. 2008); *DirecTV, Inc. v. Trone* 209 F.R.D. 455, 460 (C.D. Cal. 2002); *Visto Corp. v. Smartner Info. Sys., Ltd.*, Nos. 06-80339 MISC RMW (RS), 06-80352 MISC RMW (RS), 2007 WL 218771, at *4 (N.D. Cal. Jan. 29, 2007).

cue sheets. *See* JS at 51. FOX also misrepresents the parties' negotiations over the production of BMI's cue sheets. JS at 63. In fact, BMI offered to provide Applicants with *extensive* music use data. Applicants rejected this offer. Supplemental Decl. of Linda Dakin-Grimm Ex. B. In any event, the parties' negotiations are wholly irrelevant to whether FOX must produce its own Music Use Information.

### E. New Media Information Is Relevant

FOX claims that a general statement in the Joint Stipulation constitutes BMI's withdrawal of its specific requests for New Media Information. JS at 61. *BMI did not withdraw these requests*. As FOX concedes, BMI placed an express condition on its withdrawal of the New Media requests. FOX rejected that condition, *see id*; Dakin-Grimm Decl. Ex. G at 3, forcing BMI to move to compel the information.

That condition asked FOX to stipulate that for the duration of the license at issue, FOX would restrict Applicants from transmitting FOX programs via New Media. *Id*. FOX's rejection of this condition disproves FOX's assertion that the requests are based on a "paranoid fantasy." JS at 63. The requests are based on BMI's legitimate concern that if Applicants secure a New Media license in this case (that does not account for FOX revenue), FOX will game the music licensing process by moving the transmission of FOX shows from www.fox.com and Hulu to New Media owned or controlled by Applicants. *See* JS at 59. The music contained in FOX programs if transmitted by Applicants (whether via New Media or television) would be covered by the subject license and is therefore directly relevant to the Rate Court Proceeding. *See* JS at 60.

## II. CONCLUSION

BMI respectfully requests that this Court grant its Motion to Compel Fox Broadcasting Company to Produce Documents.

DATED: June 14, 2011            MILBANK, TWEED, HADLEY
                                                          & McCLOY LLP

|  |  |
|---|---|
|  | /s/ Gabriel M. Weaver |
|  | LINDA DAKIN-GRIMM |
|  | GABRIEL M. WEAVER |
|  | 601 South Figueroa Street, 30th Floor |
|  | Los Angeles, CA 90017 |
|  | Telephone: (213) 892-4000 |
|  | Facsimile:  (213) 629-5063 |

*Attorneys for Respondent Broadcast Music Inc.*